## Case No. 17,678.

WILKINSON et al. v. YALE et al.

[6 McLean, 16.] [1]

Circuit Court. D. Michigan. June Term. 1853.

CREDITORS' BILL — JUDGMENT OF STATE COURT — GARNISHMENT PROCEEDING—MICHIGAN STATUTE.

1. The courts of the United States can take jurisdiction, where property has been fraudulently conveyed to defeat creditors, and proceed under a state statute, where a judgment has been obtained, and execution has been returned no property.

[Cited in Claflin v. McDermott. 12 Fed. 376.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

2. And this proceeding may be had where the judgment was entered, and execution issued, in the state court.

3. And the same proceeding may be had in the state court, on a judgment obtained in this court.

4. Under the statute, judgment and execution are required. Many authorities require this on general principles.

5. But execution can never be required, on general principles, where at law the property cannot be reached.

6. A proceeding in a state court by attachment, where a garnishee is summoned, cannot be set up in bar or abatement to a creditor's bill.

7. Under a statute of Michigan, the procedure against a garnishee takes place after judgment against the defendant.

8. Until this, the procedure against the garnishee, under the statute of Michigan, is not a suit.

9. Partners cannot distribute among themselves any part of the stock in trade, to the prejudice of creditors. But when a distribution is made with the assent of the creditors, the act is not fraudulent.

[This was a bill in equity by John Wilkinson and others against Charles Yale and others.]

Wells & Cook, for complainant.

Mr. Campbell, for defendant.

McLEAN, Circuit Justice. This is in effect a creditor's bill. A judgment was obtained in the state court of Michigan, for a sum exceeding five hundred dollars. An execution was issued, which was returned, no property real or personal to be found. And the complainants allege that the defendants have conveyed their property so that it cannot be reached by an execution. The bill asks a discovery and relief. The defendants admit the *obtainment* of the judgment. They have no knowledge of the issuing of the execution or of the alleged proceedings thereon. They admit the judgment remains unsatisfied. Defendant Bronson believes Yale & Atherton have no property, real or personal. He admits that the 27th of November, 1849, they assigned to him all the notes and accounts then due to them as the firm of Chester Yale & Co., and all moneys on hand, and stoves not yet in possession, upon trust to pay creditors, &c. And he denies that the assignment was colorable or fraudulent, but that it was made and received in good faith. Bronson denies that the property is held, as charged, in trust for Yale & Atherton, except the payment of two hundred dollars to Yale. He alleges, that at the time defendant received said assignment, W. A. Cook was present as counsel for complainants, and defendant understood he was acting for them, and he expressed his entire assent to the same. That the debts stated in said list as owing by Yale & Atherton, to Rathburn & Co., and to Jewit & Root, were paid prior to the assignment; and he has since ascertained that the debt to Pratt & Co., is $530.75. Defendant has collected of the demands assigned about $500, and has paid to Yale $100, and to the creditors of Yale & Ath-

erton $129 before injunction, and the balance remains in his hands, out of which he claims to retain a compensation for his services and expenses. That of the sum so paid to creditors, $15 was to complainant, to apply on the debt for which said judgment was rendered. That some weeks before such payment, defendant exhibited to said complainant, William Wilkinson, said assignment and schedules, and fully explained the same, and he expressed his concurrence therein; and the $15 were paid to him at his particular request. That after this, and the previous assent through Cook, it is insisted the complainants have no right to disaffirm the same. That 16th April, 1850, complainants garnisheed defendant Bronson in the suit in which judgment was rendered. That said proceedings are still pending in the county state court, involving the same matters, as in this suit which remain undetermined; defendant therefore insists that complainants have not exhausted their remedy at law, &c.

The first question made is, whether the court can take jurisdiction in the case. In Lanmon v. Clark [Case No. 8,071], it was held, a creditor's bill could be filed in this court. The judgment in that case was rendered in this court; but on the same principle, relief may be given, where the judgment was given in a state court. Under the statute of Michigan, the judgment must be shown, and the return of the execution, of no property, as a basis for proceedings; and it cannot be material whether such judgment and execution be shown in the federal or state court. The facts are sufficiently established by the record of either court. And we suppose a state court could proceed in the same manner on a judgment and execution in the federal court. The basis of the procedure is the fraud alleged, or trust, which can only be reached effectually in a court of chancery. A deposition was offered and objected to, because it does not appear by whom the deposition was written, or by what means it came into the hands of the clerk. When a deposition is taken, under the act of congress, in the absence of the other party, and without notice, great strictness is required. It must appear that the deponent, or the magistrate before whom it was taken, wrote the deposition; but the case before us, was, where the deposition was taken under a rule of court, as in state practice, and not under the act of congress, the same degree of strictness is not, therefore, required. We think, that prima facie, the deposition may be received, subject to any proof showing unfairness or fraud. It is insisted that the proceeding against Bronson, as garnishee, is a bar to this procedure.

By the act of Michigan of the 28th of March, 1849, in the 13 section, it is provided, that in any action before a justice of the peace, &c., if the plaintiff or his agent shall make affidavit that he has good reason to believe, and does believe, that any one has money or effects in his hands, or under his control, or that such person is in debt to such defendant,

the justice shall issue a summons, and require such person to answer under oath, the matters alleged in the affidavit; and from the service of such summons on the garnishee, he shall be liable for the effects of the defendant in his hands. And it is declared that from the service of a summons, the suit against the garnishee shall be deemed as commenced. After the examination of the garnishee, the cause as to him, shall be continued until the final judgment against defendant. After the final judgment, the justice, on request, shall issue a summons against the garnishee, to show cause why a judgment should not be rendered against him. And the plaintiff may declare against him in trover. And the 20th section provides, that no suit shall be maintained or recovery had by such plaintiff against the garnishee for the amount of money sworn to, proved or admitted to be due from such garnishee to defendant, or for the property or value thereof, while the original suit is pending. Although the statute declares the suit shall be considered as pending, from the time the garnishee is summoned, yet, it is clear, that until after the judgment in the original case is obtained, according to the 20th section, no suit can be maintained against him. The first proceeding, therefore, against the garnishee, must be regarded in the light of a witness, except that from the time he is first summoned, he is held liable for the assets in his hands. Until after the judgment, the procedure against the garnishee cannot be considered as a suit pending, which can be set up in abatement of the present bill.

The next inquiry is, whether the assignment was void as against creditors. In the case of Fox v. Willis. 1 Mich. 321, it was held, "that a deed fraudulent as to creditors, is not void but voidable; and can be avoided only by a judgment creditor, or one claiming under him, who has taken out execution, and levied on the property fraudulently conveyed." "Where a debtor conveyed property in trust for creditors. which conveyance was fraudulent as to creditors, and afterwards gave a mortgage on a part of the same property to a creditor. who was aware of the previous conveyance. for the payment of a judgment the creditor had against him, it was held that the mortgagee, though a judgment creditor. inasmuch as he had not taken out execution on his judgment, and levied on the land fraudulently conveyed, could not call in question the validity of the prior conveyance; and that he was not protected against it as a purchaser for a valuable consideration." 2 Johns. Ch. 189; 10 Pick. 413; 2 Kent, Comm. 533; 4 Johns. Ch. 529; [Brooks v. Marbury] 11 Wheat. [24 U. S.] 78; 4 Johns. Ch. 672. The above cases are ruled, or some of them, upon the ground that judgment and execution are essential, before the party can ask relief in a court of chancery. But in the case of Hadden v. Spader, 20 Johns. 569, it was held, that this doctrine is not sustainable. That in case of stocks and other property which cannot be reached by execution, a judgment and execution are not necessary. This is undoubtedly the reasonable doctrine, and it is applicable to all cases of trusts, where a proceeding at law cannot reach the property. In the answer of Bronson. he says, that he fully explained to the Wilkinsons the nature of the assignment, as to the amount reserved for Yale; and the receipt for $15 shows it was received. as a part of the dividend. Received February 15th, 1850, of H. O. Bronson, fifteen dollars to apply on demand against Yale & Co., signed Wilkinson & Co.

Choate, a witness, states, that before the assignment was made. he told Mr. Cook, counsel for the plaintiffs, that Chester Yale, one of the partners, was to be preferred as a creditor of about two hundred dollars, in consequence of his having paid more capital than his partners, Atherton & Co., when he expressed himself gratified with the arrangement.

Samuel Higby, says, that fifty dollars were paid to Mr. Cook. with the understanding that it should be considered a part of the assets, and should be included in any dividends that should be made to said complainants.

Austin Blair, of counsel for defendants, explained to Cook the nature of the assignment agreed upon. Witness waived the injunction as to the payment of the fifty dollars, being attorney in the case, on the declaration of Mr. Cook, that if he would do so, he would receive it, as from the assignee, and would account for it out of the dividend they should be entitled to receive.

It is true, the partnership funds invested cannot be withdrawn and distributed among the partners, so as to equalize the sums advanced by each, to the prejudice of the creditors; but in this case the distribution seems to have been made with the acquiescence of the complainants and their counsel. That the complainants were fully apprised of the claims against the company, and of the claims and property assigned to the defendants, which they assented to, and that they, through their counsel. received certain sums in part of the dividends to be distributed. Under these circumstances, we think the assignment cannot be considered fraudulent. The bill is therefore dismissed at the costs of the complainant.