### FEIDLER et al. v. BARTLESON.*

(Circuit Court of Appeals, Ninth Circuit.   February 3, 1908.)

#### No. 1,439.

1. COURTS—FEDERAL COURTS—CREDITORS' SUIT—JURISDICTION.
    A creditor's bill may be maintained in a federal Circuit Court to en-force a domestic judgment of the state court.

2. SAME.
    The fact that complainant submitted himself to the jurisdiction of a state court when he recovered a judgment against F., and that the ju-risdiction of such court was sufficiently broad to afford complainant all the relief prayed for in a creditors' suit, did not deprive him of the right to institute such suit in the federal courts against defendants who were not parties to the action in the state court.

3. SAME.
    Where complainant sought to enforce a judgment against F. out of the proceeds of an alleged partnership in the hands of the administratrix of the deceased partner, the fact that the judgment was recovered in the superior court of King county, Wash., on the probate side of which the administration of the estate of the deceased partner was pending, did not require prosecution of the creditor's bill in that court, the equity and pro-bate jurisdiction of which is separate and distinct, complainant not be-ing able to procure appropriate relief in the probate proceedings.

---

*Rehearing denied June 10, 1908.

4. **CREDITORS' SUIT—OTHER REMEDY.**

A judgment creditor was entitled to enforce his judgment by an original bill in equity, notwithstanding he might have obtained relief at law by garnishment proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Creditors' Suit, § 6.]

5. **COURTS—FEDERAL COURTS—JURISDICTION—CITIZENSHIP.**

Where a creditor's bill in a federal court to enforce a state judgment sought to establish the existence of a partnership only for the purpose of subjecting the interest of the surviving partner in the partnership funds to the payment of complainant's judgment, the bill was not demurrable on the ground that complainant sought thereby to compel defendants, who were both residents of the state, to litigate in the Circuit Court a demand which one had against the other.

[Ed. Note.—Diverse citizenship as a ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

6. **APPEAL AND ERROR—PLEADINGS—PREJUDICE.**

Where matter constituting no defense to the bill was excepted to, and the court overruled the exceptions, but announced that the matter pleaded would be wholly disregarded on final hearing, and that any expense added to the proceedings by reason thereof would be taxed to the defendants, the appellants were not prejudiced thereby.

7. **CREDITORS' SUIT—ANSWER—SUFFICIENCY—CONSPIRACY—FRAUD.**

Where a creditor's bill sought to compel payment of a judgment against an alleged surviving partner out of the assets of a firm in the possession of the administratrix of the deceased partner, allegations that the judgment had been obtained by complainant against such surviving partner, based on various accounts which had been assigned to complainant by parties doing business in the eastern states, and that such surviving partner had entered into a conspiracy with complainant and others to defraud the estate of the deceased partner, and that he had no interest in the suit, but was permitting his name to be used in furtherance of the conspiracy; that complainant was not the real party in interest and that the accounts on which the judgment was based were barred by limitations, were insufficient to show either a conspiracy or fraud sufficient to invalidate the judgment.

8. **ASSIGNMENTS—VALIDITY—ASSIGNMENTS FOR COLLECTION.**

An assignment of claims to complainant for collection may be lawfully made under the statutes of Washington.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, § 126.]

9. **CREDITORS' SUIT—VALIDITY OF JUDGMENT—CLAIMS.**

Where various claims against a surviving partner were assigned to complainant and merged in a judgment valid on its face and unimpeachable for fraud, complainant's right to enforce payment of the judgment was as unimpeachable as if the judgment had been based on a valid debt originally payable to him.

10. **SAME.**

The rule that whenever a judgment is sought to be enforced to the detriment of a third person, he may avoid its effect by showing that the party to the former action colluded and procured the judgment to defraud him, has no application where the judgment creditor is seeking to compel payment out of funds equitably belonging to the judgment debtor.

11. **JUDGMENT—FOREIGN JUDGMENT—ANCILLARY ADMINISTRATION—JUDGMENT —CONCLUSIVENESS.**

A decree in ancillary administration proceedings in the United States Commissioners' Court at Nome that no partnership existed between decedent and a judgment debtor was not conclusive against complainant's right to pursue assets in the hands of distributees of such decedent within

the jurisdiction of the federal Circuit Court for the District of Washington by a creditor's bill filed in such court, on the ground that a partnership in fact existed.

**12. APPEAL AND ERROR—EVIDENCE—ADMISSION.**

Where, after the admission of certain objectionable testimony before an examiner, the competency of similar testimony was submitted to the court who ruled that it was incompetent, and no further testimony of that nature was received, it would be presumed on appeal that the testimony already introduced was disregarded by the court, and therefore constituted no ground for reversal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3766.]

**13. PARTNERSHIP—FINDINGS—EVIDENCE.**

Evidence *held* to sustain a finding that a partnership existed between a judgment debtor and his deceased brother.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 75–80.]

Appeal from Circuit Court of the United States for the Northern Division of the Western District of Washington.

For opinion below, see 149 Fed. 299.

The appellee brought a suit in equity in the nature of a creditor's bill to enforce the payment of a judgment which he had obtained on June 25, 1904, in the superior court of King county, Wash., against F. J. Feidler for the sum of $2,881.75 and costs, upon which judgment execution had been issued, and returned nulla bona. The suit was brought against F. J. Feidler and Edith M. Feidler, as administratrix of the estate of Ed. L. Feidler, deceased. The bill alleged that F. J. Feidler and Ed. L. Feidler were brothers and partners in a business conducted at Nome and other points in Alaska, under the name of the Progreso Trading Company, which partnership was entered into in May, 1900, and continued during the years 1901, 1902, and 1903; that, by the partnership agreement, each partner contributed an equal sum to the copartnership fund, and that after 1901 Ed. L. Feidler personally conducted the business in Alaska, while F. J. Feidler remained at Seattle to purchase goods and ship the same to Nome and other Alaskan ports; that Ed. L. Feidler died at Nome on October 19, 1903, and at that time the amount of assets in the copartnership was $29,150, subject to the payment of the debts of the copartnership, amounting in the aggregate to $10,000; that on November 28, 1903, Edith M. Feidler was appointed administratrix of the estate of Ed. L. Feidler, deceased, in the superior court of King county, Wash., and on May 19, 1904, she caused to be filed in that court an inventory and appraisement of the estate of Ed. L. Feidler, in which the assets were valued at more than $29,000; that the appraisers of the estate, without warrant or authority of law, attempted to adjudicate the interests of F. J. Feidler, and reported to the court that he had no interest in the business of the Progreso Trading Company, and was not a partner therein during the year 1903, and that Edith M. Feidler, if permitted to administer the estate, intended to distribute the same in disregard of any interest or claim of F. J. Feidler, and to the injury of the appellee; that F. J. Feidler had no property other than his interest in the assets of said partnership, then in the hands of said administratrix. Edith M. Feidler, administratrix, interposed a demurrer to the bill for want of equity, and also for want of jurisdiction, in that it was sought to enforce a domestic judgment of the superior court of King county, and to litigate in a federal court a demand which the complainant in the bill claimed that his judgment debtor, a resident of the state of Washington, had against said Edith M. Feidler, who was also a resident of that state. The demurrer was overruled, and thereupon the said administratrix filed her answer, admitting certain of the allegations of the bill, but denying that F. J. Feidler was ever a partner with Ed. L. Feidler, or had any interest in the Progreso Trading Company. Further answering, she set up as affirmative defenses: First, that as the duly ap-

pointed, qualified, and acting administratrix of said estate she had published notice to creditors to present their claims within one year from December 19, 1903; that F. J. Feidler had presented no claim against the estate within a year thereafter, wherefore the claim was barred under the provisions of the statutes of the state of Washington. Second, that on October 20, 1903, C. G. Cowden was appointed administrator of the estate of Ed. L. Feidler at Nome, and on April 16, 1904, he made his first report and filed the same in the United States Commissioner's Court for the District of Alaska, in the Nome precinct, in which he inventoried the assets of the Progreso Trading Company as the property of Ed. L. Feidler, deceased, and on June 5, 1904, made a second report in which the property was again inventoried as the property of Ed. L. Feidler, deceased, and all claims against the Progreso Trading Company were scheduled and allowed as claims against Ed. L. Feidler; that on July 11, 1904, the said Cowden made his final report to the United States Commissioner's Court at Nome, whereupon notice of final settlement was made and published according to law, and on September 15, 1904, said final report was approved, and the estate of Ed. L. Feidler was ordered to be distributed, one-half to his widow, Edith M. Feidler, and the remaining one-half to his two minor children; that at said final settlement there remained in the hands of said Cowden, after payment of all debts, costs, and allowances, the sum of $7,181.72, which was thereupon transmitted by the said Cowden to Edith M. Feidler at Seattle; that F. J. Feidler never at any time presented any claim to the administrator, Cowden, to any part of the assets of the Progreso Trading Company. Third, that F. J. Feidler never at any time presented to said administratrix any claim under oath, as required by law, against the estate of Ed. L. Feidler, deceased, or any claim to any interest in the assets of the Progreso Trading Company; that he did, however, some time after the death of Ed. L. Feidler, notify said administratrix, both orally and in writing, that he claimed to be a partner of Ed. L. Feidler, and requested that he be recognized as such; that she notified him that she had never before heard of such a claim, and that she had always understood that Ed. L. Feidler was the sole owner of the Progreso Trading Company, and she requested said F. J. Feidler to present some evidence of the partnership other than his naked statement, and was informed by him that there was no agreement, and that there was no writing of any kind or description and no reference either by letter or otherwise to any such partnership; that the three commissioners appointed by the superior court of King county to appraise the estate of Ed. L. Feidler fully investigated the alleged claim of F. J. Feidler, and in their inventory and appraisement reported that they failed to find any evidence to support his claim; that F. J. Feidler was authorized by Ed. L. Feidler, prior to his death, to sign the name of the latter to checks, and that F. J. Feidler, immediately upon learning of the death of his said brother, took from the Puget Sound National Bank, the sum of $1,500, and collected other amounts belonging to Ed. L. Feidler, aggregating between $2,300 and $5,000, all of which he illegally appropriated to his own use. The answer admitted that, in the year 1900, both Ed. L. Feidler and F. J. Feidler shipped a quantity of supplies to Nome and Teller City, Alaska, and both accompanied said shipment and were partners in that venture; that after that year Ed. L. Feidler was in business for himself and alone, under the name of the Progreso Trading Company; that during the years 1901, 1902, and 1903, Ed. L. Feidler sent checks and other cash securities from Nome to F. J. Feidler in Seattle, with instructions to deposit the same and to pay out certain amounts on designated claims; that he also sent orders for goods to F. J. Feidler; that, otherwise, F. J. Feidler had no connection whatever with the Progreso Trading Company, and that Ed. L. Feidler usually, upon his return from Alaska in the fall, paid said F. J. Feidler for such services. Upon the filing of this answer the appellee filed an amended bill of complaint for the purpose of responding to the matters set up in the answer, and also to bring in as additional parties the two minor children of Ed. L. Feidler. In the amended bill, in addition to the matter set up in the original bill, the appellee alleged that said Cowden, the administrator at Nome, in disregard of the rights of F. J. Feidler, inventoried the property of the Progreso Trading Company as belonging to Ed. L. Feidler; that F. J. Feidler presented to the administratrix a written statement that he was part-

161 F.—3

ner with Ed. L. Feidler, whereupon she made a pretended investigation of the claim, and after such investigation reported that she was without evidence sufficient to convince her that he was such partner; that thereafter F. J. Feidler employed attorneys to represent him. and said attorneys entered into an agreement with the attorney of the administratrix, by which the latter was to proceed to Nome, have the administration there closed, and the assets of the estate transmitted to the administratrix, after which said F. J. Feidler was to have a reasonable time to establish by such legal proceedings as his counsel should deem proper and necessary his interest and ownership in such assets; that said attorney for the administratrix, in violation of such agreement, procured the filing of said reports by Cowden and the distribution of the funds of the estate to Edith M. Feidler individually and to herself as guardian of her minor children; that the entire proceedings in the Commissioner's Court at Nome were illegal and of no binding force and effect upon F. J. Feidler and his claim to an interest in the assets, and that that court was without jurisdiction.

The trial court, upon the proofs upon the final hearing, found that F. J. Feidler was a partner with Ed. L. Feidler, deceased, and decreed that the appellee's judgment be paid out of his share of the partnership assets.

Bo Sweeney and G. E. Steiner, for appellants.

James A. Snoddy, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the demurrer to the original bill should have been sustained for want of jurisdiction and for want of equity. It is said that there was want of jurisdiction in the fact that the appellee sought by his bill to enforce in the Circuit Court a domestic judgment of a state court. But that such a judgment may be the basis of a creditor's bill in the federal court is well sustained by the authorities. First National Bank of Chicago v. Steinway et al. (C. C.) 77 Fed. 661; Alkire Grocery Co. v. Richesin (C. C.) 91 Fed. 79; Bidwell v. Huff (C. C.) 103 Fed. 376; National Tube Works v. Ballou, 146 U. S. 517, 13 Sup. Ct. 165, 36 L. Ed. 1070. Further challenge to the jurisdiction is presented in the argument that because the appellee submitted himself to the jurisdiction of the state court when he brought his action against F. J. Feidler, and because the jurisdiction of that court was broad enough to afford him all relief which he here seeks, he had no right to invoke the aid of the court below against the appellants, who were not parties to the action in the state court. We find no merit in this. The appellants had no interest in the matter in controversy in the state court, and could not have been made parties thereto. The judgment in that action established the debt of F. J. Feidler to the appellee. It remained to the appellee to enforce its payment by any proper proceeding. The amount involved and the citizenship of the parties being such as to give jurisdiction to the court below, he had the right to bring his suit therein. It is true that the judgment had been rendered in the superior court of King county, and that the administration of the estate of Ed. L. Feidler was conducted in that court. But the equity and probate powers of the superior courts of the state of Washington are separate and distinct, and the appellee was not bound to file his bill in that court from the mere fact that, on the probate side, the same court had jurisdiction of the estate, nor

could he have obtained appropriate relief in probate proceedings. Stewart v. Lohr, 1 Wash. St. 311, 25 Pac. 457, 22 Am. St. Rep. 150; Winston v. Crowe, 28 Wash. 65, 68 Pac. 174; In re Alfstad's Estate, 27 Wash. 175, 67 Pac. 593. Assuming. as contended by counsel for appellants, that the superior court could have granted full relief to the appellee under the provisions of the statutes of Washington relating to probate and garnishment, the appellee was not limited to those remedies. He had the right to proceed by an original bill in equity, notwithstanding that he might have enforced the payment of his judgment at law by garnishment proceedings. Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Fiske v. Gould (C. C.) 12 Fed. 372.

It is urged, further, that the demurrer should have been sustained for the reason that the appellee sought by his bill to compel the defendants therein, who are both residents of the state of Washington, to litigate in the Circuit Court a demand which one had against the other. To this it is only necessary to say that the bill is not brought to permit or to compel the defendants therein to litigate between themselves. It is a bill to establish the existence of a partnership between Ed. L. Feidler and F. J. Feidler, only for the purpose of subjecting the interest of the latter in the partnership funds to the payment of the appellee's judgment.

The ruling of the court below on the exceptions of the appellee to the answer to the amended bill is assigned as error. The exceptions were directed against portions of the answer which set up as a defense to the bill certain allegations to the effect that the judgment obtained against F. J. Feidler by the appellee was based upon various accounts, 23 in number, which had been assigned to the appellee by parties doing business in various eastern states, that F. J. Feidler had entered into a conspiracy with the appellee and other parties to defraud and pilfer the estate of Ed. L. Feidler, deceased, that F. J. Feidler had no real interest in the suit, but was permitting his name to be used in furtherance of the conspiracy, that the appellee was not the real party in interest, and that said accounts were incurred in the year 1898, and when the action was begun in the state court, were barred by the statute of limitations. The trial court, while ruling that the matters so alleged were no defense to the suit, held that, under the rules of equity practice, exceptions could not be taken to parts of an answer save for scandal, when the complainant had waived an answer under oath, and on that ground overruled the exceptions, but announced that the matter so pleaded would be wholly disregarded upon the final hearing of the case, and that any expense added to the proceedings by reason thereof, would be taxed to the defendants in the bill. The appellants were clearly not prejudiced by this ruling. The matters so excepted to in the answer constituted no defense to the bill. The appellants have no concern with the defense which F. J. Feidler might have interposed to the action at law. He was not bound on their behalf or on his own, to plead the statute of limitations. The facts so set forth in the answer fall far short of showing a conspiracy or fraud such as to invalidate the judgment. An assignment of claims to the appellee for the purpose of collection, could lawfully be made under the statutes of the state of Washington. Those claims being merged in a judgment, valid

on its face, and unimpeachable for fraud, the judgment creditor's right to enforce its payment is as unimpeachable as it would be if the judgment had been based upon a single debt originally due and payable to him. Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248; Alkire Grocery Co. v. Richesin (C. C.) 91 Fed. 79. The appellants cite authorities to the proposition that whenever a judgment is sought to be used to the detriment of a third person, he may avoid its effect by showing that the parties to the former action colluded together, and thereby procured the judgment for the purpose of defrauding him, but that doctrine has no application to the present case, for here there is no showing whatever of a purpose to defraud the appellants, or to use the judgment to their detriment. What they are required to do by the final decree is to pay to the appellee herein money which in equity belonged to F. J. Feidler, and not to the appellants, money which they had no right to retain.

It is contended that the judgment on the final settlement of the estate in the Commissioner's Court at Nome is a final adjudication that Ed. L. Feidler, deceased, was the sole owner of the property of the Progreso Trading Company, and that the appellee is bound thereby. But the court at Nome was but a court of ancillary administration, and it may be doubted whether within the jurisdiction conferred upon that court, F. J. Feidler could have established his equitable interest in the property in the possession of the court. But, however this may be, the appellee was not barred by the final decree of that court from pursuing the assets in the hands of the distributees within the jurisdiction of the court below. In a similar case, Borer v. Chapman, 119 U. S. 587-599, 7 Sup. Ct. 342, 30 L. Ed. 532, the court said:

"The administration of the estate of Gordon, in California, was merely ancillary; the primary administration was that of the testator's domicile, Minnesota. Chapman was not a citizen of California, nor resident there; he was no party to the administration proceedings; he was not bound to make himself such. If he had chosen he could have proved his claim there and obtained payment, but he had the right to await the result of the settlement of that administration, and look to such assets of Gordon as he could subsequently find in Minnesota, whether originally found there or brought there from California by the executors or legatees of Gordon's estate."

It is urged that testimony of F. J. Feidler concerning the partnership transactions between him and Ed. L. Feidler deceased, was improperly admitted in evidence. We find from the record that, while testimony was being taken before the examiner, the question of the competency of the testimony of F. J. Feidler as to his transactions with his deceased brother was certified to the court below, and that the court ruled that the witness should not be permitted to testify as to transactions with, or statements by, Ed. L. Feidler. Prior to that ruling, some testimony had been given by F. J. Feidler as to such transactions or statements, but thereafter none such was taken. We assume, of course, from the ruling of the court below, that such testimony was disregarded by that court as it is disregarded in this court. Its admission, therefore, is no ground for reversal.

Upon the evidence which is found in the record, we discover no ground to disturb the conclusion of the court below upon the principal

question of the case—the question whether or not F. J. Feidler was a partner with Ed. J. Feidler at the time of the death of the latter. The evidence shows beyond dispute that in the year 1900 they went together to Nome, with a stock of merchandise, and that during that year and the following year they were both engaged as partners in business at Nome, under the name of the Progreso Trading Company. After 1901, F. J. Feidler remained at Seattle, where he occupied an office for the firm and attended to the business of the copartnership at that place, which was the point of purchase and shipment of all the goods of the firm. He received from Ed. L. Feidler remittances of large sums of money from Nome, and he purchased the goods which were shipped to Nome. There is no evidence that a dissolution of the copartnership was ever had or announced. There was testimony of admissions of Ed. L. Feidler made in the years 1902 and 1903, tending to show that at that time F. J. Feidler was his partner, and there was testimony, on the other hand, that Ed. L. Feidler, at different times subsequent to 1901, stated that he was the sole proprietor of the Progreso Trading Company, and that he was paying his brother for his services. But it is not shown that any of these statements were made in the presence of F. J. Feidler or were communicated to him. There was other evidence tending to show copartnership, notably a letter written by Edith M. Feidler to F. J. Feidler on February 18, 1904, indicating that at that time she considered him a partner. The preponderance of the evidence is in favor of the finding made by the court below.

We find no ground for reversing the decree. It is affirmed.